**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James David DANIEL,**
**Defendant-Appellant.**

**No. 86–1467**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 24, 1987.

Danny D. Burns, Forth Worth, Tex. (court-appointed), for defendant-appellant.

Marvin Collins, U.S. Atty., Frederick M. Schattman, Asst. U.S. Atty., Ft. Worth, Tex., Sidney Powell, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

James David Daniel appeals his conviction for distribution of amphetamine and for aiding and abetting in its distribution, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2. Daniel makes no challenge to the sufficiency of the evidence; he and an accomplice distributed amphetamine to a Texas Department of Public Safety undercover agent. His appeal focuses entirely on legal issues. He contends that amphetamine should not be considered a Schedule II controlled substance because it was unconstitutionally reclassified by the Attorney General; that the statute and regulations must be strictly construed in his favor; that Congress repealed the reclassification; and that his trial was rendered fundamentally unfair because potential jurors momentarily viewed him in handcuffs as he was being escorted to the courtroom prior to voir dire. Finding no merit in any assigned error, we affirm.

### Reclassification

■ The Comprehensive Drug Abuse Prevention and Control Act of 1970 established five schedules of controlled substances, based on the potential for abuse and legitimate medical value of each substance. 21 U.S.C. § 812(a). Recognizing the likelihood of change in the qualitative and quantitative data available on some substances, Congress established detailed procedures for their reclassification. In 1971 amphetamine, originally a Schedule III substance, was moved to Schedule II. The maximum penalty for distribution of a Schedule III substance is five years; that for distributing the more harmful Schedule II drugs is 15 years.

Daniel contends that Congress unconstitutionally delegated its lawmaking authority by allowing administrative reclassification resulting in changes in criminal penalties. We first rejected this argument in *United States v. Gordon*, 580 F.2d 827 (5th Cir.1978), agreeing with our colleagues in the Second and Ninth Circuits, *United States v. Pastor*, 557 F.2d 930 (2d Cir. 1977), and *United States v. Davis*, 564 F.2d 840 (9th Cir.1977). The validity of the reclassification provisions has been affirmed consistently in this and other circuits. *See, e.g., United States v. Fooladi*, 746 F.2d 1027 (5th Cir.1984); *United States v. Erwin*, 602 F.2d 1183 (5th Cir.1979); *United States v. Barron*, 594 F.2d 1345 (10th Cir.

1979); *United States v. Roya,* 574 F.2d 386 (7th Cir.1978).

Cognizant of these precedents, Daniel suggests that these holdings have been undermined by the recent decision in *Bowsher v. Synar,* 478 U.S. ——, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). We cannot agree. The Supreme Court specifically stated in *Bowsher* that it was not reaching the delegation issue, 478 U.S. at —— n. 10, 106 S.Ct. at 3193 n. 10, 92 L.Ed.2d at 602 n. 10. Moreover, the Court cast no doubt on the legitimacy of the delegation doctrine we applied in *Gordon.* We therefore have neither reason nor inclination to question the clear precedents of this and other circuits upholding the Attorney General's reclassification of controlled substances among the five schedules established by Congress. Nor is this panel persuaded that the *en banc* court should revisit *Gordon* and its progeny, as alternatively suggested by Daniel.

### Strict Construction

Daniel next contends that the delegation of classification authority violates the constitutional principle that criminal statutes must be strictly construed. We have no quarrel with Daniel's statement of the principle, for it is a fundamental rubric that criminal statutes are subject to strict construction. *United States v. Reeves,* 752 F.2d 995 (5th Cir.1985). We do find fault, however, with Daniel's suggested application of this rule. Daniel argues that the statutory scheme is unconstitutional because the reclassification potential requires one to examine both the statute and administrative regulations to determine the offense and penalty. We are not persuaded.

■ The due process clause requires that a penal statute define a criminal offense with sufficient definiteness that an ordinary person can understand what conduct is prohibited. *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The purpose of the rule is to provide adequate notice to one of ordinary

intelligence that certain conduct is proscribed, and to avoid erratic and arbitrary enforcement. *Colautti v. Franklin,* 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); *Tobacco Accessories & Novelty Craftsmen Merchants Association of Louisiana v. Treen,* 681 F.2d 378 (5th Cir. 1982). In the instant case, the statute under which Daniel was prosecuted unequivocally forbade the distribution of amphetamine. 21 U.S.C. § 812(c), Schedule III(a)(1). Reference to the Code of Federal Regulations was necessary only to find the reclassification of amphetamine and thus learn that a more severe sanction applied for infractions. But the conduct forbidden by the statute was not affected; it remained unchanged. The statute defined and proscribed the conduct, the statute prescribed for administrative reclassification of substances, and the Code of Federal Regulations, 21 C.F.R. § 1308.12(d), set forth with specificity the reclassification of amphetamine to Schedule II. Daniel was given the notice required by due process guarantees. As reflected by the cases approving reclassification under this and other acts, the mere fact that regulations affect an aspect of the crime or punishment does not implicate due process, provided the regulations are legally and constitutionally promulgated.[1]

### Congressional Repeal

■ Daniel's suggestion that in 1984 Congress repealed the reclassification of amphetamine reflects the intensity of effort by court-appointed counsel, but little else. In 1984 Congress amended Schedule II by adding the following parenthetical after "cocoa leaves" in 21 U.S.C. § 812(c): "(including cocaine and ecgonine and their salts, isomers, derivatives, and salts of isomers and derivatives.)" Daniel argues that by amending Schedule II without explicitly adopting the administrative changes made in the intervening years, Congress implicitly rejected those changes. We disagree. The amendment sought only to clarify the

---

1. *See, e.g., United States v. Chiarella,* 588 F.2d 1358 (2d Cir.1978), *rev'd on other grounds,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980); *United States v. Ray,* 488 F.2d 15 (10th Cir. 1973).

**664**

definition of cocoa leaves. This is apparent from both the statutory language and the legislative history. S.Rep. No. 225, 98th Cong., 1st Sess. 262–63, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3444–45. There is no basis for suggesting that by this amendment Congress intended to repeal all administrative reclassifications made between 1970 and 1984.

### Handcuffs

Daniel maintains that the jury venire should have been quashed because jurors may have seen him in handcuffs while he was being escorted to the courtroom. Evidence developed at a hearing on his motion to quash reflects that prospective jurors may have seen Daniel momentarily while he was standing with marshals awaiting an elevator, and again just before his entry into the courtroom. There is no claim that Daniel was handcuffed while in court or while in the presence of the jury selected for trial of his case.

The trial court did not err by declining to quash the jury venire. During voir dire and again during trial the court pointedly instructed the jury on the presumption of innocence. During the jury charge the court instructed the jury that if they saw the defendant in handcuffs, while being escorted to court, that was merely a precaution required by rules of court and of the marshal's service and was in no way a reflection on the defendant's guilt.

We have held that the presumption of innocence is not prejudiced by brief glimpses of the defendant in handcuffs. *United States v. Webster*, 750 F.2d 307 (5th Cir. 1984); *United States v. Escobar*, 674 F.2d 469 (5th Cir.1982); *United States v. Diecidue*, 603 F.2d 535 (5th Cir.1979). In those cases there were no objections made, but the holdings are applicable to the instant case. We are convinced there was no prejudice in the fleeting exposure of the defendant in handcuffs, considered in light of the trial court's forceful charge on the presumption of innocence and its specific charge that the presence of handcuffs did not remove the presumption of innocence and was not to be taken as evidence of guilt.

The convictions are AFFIRMED.