UNITED STATES of America

v.

Sammy Lee SMITH, Defendant.

UNITED STATES of America

v.

Larry COLEMAN, et al., Defendants.

Nos. 87–20219–4, 88–20037–4.

United States District Court,
W.D. Tennessee, W.D.

May 20, 1988.

Lawrence J. Laurenzi, Asst. U.S. Atty., Memphis, Tenn., for U.S.

April Ferguson, Asst. Federal Defender, Memphis, Tenn., for Smith.

W. Otis Higgs, Memphis, Tenn., for Coleman.

## MEMORANDUM DECISION UPHOLDING THE VALIDITY OF SENTENCING GUIDELINES

McRAE, Senior District Judge.

This matter is before the Court on two motions. In behalf of the defendant Smith,

there was filed in case number 87–20219 a Motion to Invalidate Sentencing Guidelines Promulgated by the United States Sentencing Commission and to Sentence Defendant Under Prior Existing Law, and in 88–20037–4, in behalf of the defendant Coleman, there was filed a Motion to Preclude Application of the Federal Sentencing Guidelines on Constitutional and Statutory Grounds. Extensive memoranda were filed by the attorneys for the parties, but the Court exercised its discretion to deny the motion filed by the attorneys for the United States Sentencing Commission (the Commission) to be allowed to file a brief and argue against the defendants' motions. Oral argument was had on May 5, 1988, and this represents the Court's ruling denying the motions.

### Background

After more than a decade and much controversy, the Congress succeeded in passing the Comprehensive Crime Control Act of 1984 which was an extensive modification of the Criminal Code of the United States. This legislation included substantial changes in the punishment provisions of the Criminal Code which has been designated the Sentencing Reform Act (SRA) because it undertook to reform the system whereby Congress specified the minimum and maximum periods of confinement, which were to be imposed with very broad discretion in the Article III district judges.

The primary method of sentencing reform was to establish the Commission which was charged with adopting "guidelines" to be considered and used in most circumstances.[1] One of the primary goals sought by the Guidelines was the elimination of the wide disparity of sentences which resulted from the sentences imposed by the various district judges. This and other criticisms created a call for a reform of the method in which the judges had exercised such broad discretion.

The SRA established the Commission and imposed a deadline upon the completion of its assignment. This was postponed in order to allow time for completion of the assignment. Ultimately after months of effort, the Commission filed its report in time for the Guidelines to take effect on November 1, 1987, unless Congress took no action to modify, defeat, or delay the implementation of the work of the Commission.

The work of the Commission became extremely controversial especially with members of the judiciary, many of whom expressed strong disapproval of the proposed reforms. Many judges endorsed attempts to prevent or defer the implementation of the reforms by urging the passage of legislation for that purpose. The Justice Department and others strongly opposed the preventive legislation. It was defeated in the House of Representatives. See 133 Cong.Rec.H. 8215 (Oct. 6, 1987).

### Statutory Provisions

Pursuant to 28 U.S.C. § 991(a), the Commission was established as "an independent commission in the Judicial Branch of the United States." The President appoints seven voting Commissioners, three of whom must be Article III judges, 28 U.S.C. § 991(a). The initial Commissioners were appointed by the President, "with the advice and consent of the Senate" for six-year terms renewable once, and can be removed by the President for "neglect of duty or malfeasance in office or for other good cause shown" 28 U.S.C. § 991(a).

Title 28 U.S.C. § 991(b), sets forth the purposes of the Commission:

1. Establish sentencing policies and practices for the Federal criminal justice system that

(a) assure the meeting of the purposes of sentencing as set forth in Section 3553(a)(2) of Title 18, United States Code;[2]

---

1. Congress expected that less than twenty percent of sentences would be outside the guidelines. See S. Rep. No. 98–225, 98th Cong., 2nd Sess. 52 n. 71 (1983), U.S.Code Cong. & Admin. News 1984, 3182, 3235 n. 71.

2. Four factors to be considered in imposing a sentence are provided in 18 U.S.C. § 3553(a)(2): the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate

(b) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices; and

(c) reflect, to the extent practicable, advancement in the knowledge of human behavior as it relates to the criminal justice process;

2. Develop means of measuring the degree to which the sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing as set forth in [18 U.S.C. § 3553(a)(2)].

The duties of the Commission set out in 28 U.S.C. § 994 state that "the Commission, by affirmative vote of at least four members ... pursuant to the rules and regulations and consistent with all pertinent provisions of this Title and Title 18 ... shall promulgate and distribute to all courts of the United States" Guidelines for determining sentences, including whether to impose probation, fine or imprisonment.

The Commission is also instructed to insure that the guidelines reflect:

*28 U.S.C. § 994(j)* ... the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense ...

*28 U.S.C. § 994(k)* ... the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.

deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The Commission has continuing responsibility to review the sentencing guidelines regularly, including ruling on petitions by defendants to modify the guidelines, and deciding under what terms. 28 U.S.C. § 994(*o*) through (u). Amendments to the guidelines take effect automatically unless, within 180 days after they are reported, specific legislation provides otherwise. 28 U.S.C. § 994(p). The Commission also has significant research, reporting, and recommendatory functions. 28 U.S.C. §§ 991(b)(2); 994(m), (*o*) through (s), (w); and § 995(a)(8), (12) through (20); and § 997.

The Commission's work is referred to as "Guidelines" because the law states that a sentencing court "shall impose a sentence of the kind, and within the range [set forth in the Commission guidelines] unless the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Commission in formulating the guidelines and that should result in a sentence different from that described." 18 U.S.C. § 3553(b). Either the government or the defendant may appeal if a sentence is imposed that is outside the Commission guidelines. 18 U.S.C. § 3742.[3]

Both of the defendants whose motions are being ruled on herein have plead guilty to separate crimes in separate cases consisting of possession with intent to distribute cocaine, (Smith approximately 4 ounces of cocaine and Coleman approximately 21 grams of cocaine base). Neither has been sentenced, nor have they been required to respond to the presentence report and the guidelines calculated therein. The Court is advised that the guidelines for the defendants are:

| Custody | Defendant Smith | Defendant Coleman |
|---|---|---|
| Supervised Release | 52–63 months 3–5 years | 63–78 months 4 years |
| Fine | No ability to pay | Not calculated |

3. The Sentencing Act also abolished the United States Parole Commission, which served as an independent agency within the Department of Justice. 18 U.S.C. § 4202, *et seq.* The Parole Commission remains in office with jurisdiction over pre-guideline offenses until 1992, five years after the guidelines are effective. See 98 Stat. 2032, Sec. 235(b)(2).

Both defendants perceive that their sentences will be less favorable under the new guidelines. Therefore they charge that the legislation which enabled the formulation of the procedure for establishing the Guidelines is unconstitutional. Consequently they seek to be sentenced under the legislation and procedures applicable before the implementation of the current guidelines procedure which was implemented November 1, 1987. The defendant Coleman also contends that even if the Court concludes that the Guidelines are constitutional, certain sections of the Guidelines are in conflict with the enabling legislation and therefore should not be applied in determining the sentence to be imposed upon the defendant Coleman.

*Invalidity Based Upon Improper Delegation of Authority by Congress*

 Both defendants challenge SRA as an unconstitutional delegation of legislative power in violation of Article I, Section 1, of the Constitution, which provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States...." The defendants thus contend that Congress is prohibited from delegating its power to another branch of the government.

In exercising its legislative power, however, Congress may draw assistance from other branches of the government. Indeed, "[i]n an increasingly complex society Congress obviously could not perform its functions if it were obligated to find all the facts subsidiary to the basic conclusions which support the defined legislative policy." *Opp Cotton Mills, Inc. v. Administrator*, 312 U.S. 126, 145, 61 S.Ct. 524, 532, 85 L.Ed. 624 (1941). When Congress sought to regulate utilities, for example, it was permitted to delegate to the Federal Power Commission the authority to set "just and reasonable" rates for natural gas. *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 600, 64 S.Ct. 281, 287, 88 L.Ed. 333 (1944). "If Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise their delegated authority] is directed to conform,

such legislative action is not a forbidden delegation of legislative power." *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 406, 409, 48 S.Ct. 348, 351, 352, 72 L.Ed. 624 (1928).

In the instant cases, defendants argue that Congress failed to provide sufficient guidance to direct the Commission's implementation of the Act.

Only twice has the Supreme Court struck down a statute by reason of undue delegation of legislative power. For an historical summary, see *Synar v. United States*, 626 F.Supp. 1374, 1383 (D.D.C.1986), *aff'd on other grounds sub nom., Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed. 2d 583 (1986). Both cases were decided during a period of unusual conflict between the Supreme Court and the Roosevelt-dominated Congress. Both cases struck down portions of the National Industrial Recovery Act (NIRA) of 1933. *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). Since then, the Court has not invalidated a statute under the delegation doctrine. *Synar*, 626 F.Supp. at 1383 & n. 9.

*Schechter Poultry* concerned a statute that permitted members of an industry to propose, and the President to approve, "codes of fair competition" for that industry. Congress neglected to define "fair competition" in any way, leaving it to the industry and the President to codify any measures that "may tend to effectuate" such broad goals as increased industrial utilization, increased consumption, reduced unemployment, improved standards of labor, and conservation of natural resources. *Schechter*, 295 U.S. at 534–35, 55 S.Ct. at 845. The Court understandably held that the statute's "wish list" of permissible goals did not provide adequate standards to guide industry or the President. *Id.* at 541–42, 55 S.Ct. at 848.

In *Panama Refining*, the section of the NIRA under attack authorized the President to make illegal any shipments of petroleum or petroleum products produced or

withdrawn from storage in excess of the amount permitted by state authority. *Panama Refining*, 293 U.S. at 414–15, 55 S.Ct. at 245–46. The statute failed to set forth any policy or rules to guide state officials in their determination of what production should be permitted. Nor did the statute establish any criteria to govern the President's discretion. *Id.* at 415, 55 S.Ct. at 246. The Supreme Court struck down that section because it gave to the President an unlimited authority to determine the policy and to lay down the prohibition, or not lay it down, as he may see fit. *Id.*

The contrast between those two 1935 cases and the SRA is obvious. SRA does not increase the existing delegation of sentencing authority. Before SRA, the courts were constrained to sentence within the maximum and any minimum set out in the criminal statutes. SRA does not permit the Commission to ignore these existing sentencing limits or authorize any punishment that was not possible before SRA.

Within these limits, SRA also provides clear policy statements and specific directives to guide the Commission in exercising the delegated rulemaking authority. SRA sets forth the following "intelligible principles" directing the Commission to: (1) punish in accordance with the four recognized purposes of criminal law—punishment, deterrence, protection, and rehabilitation; (2) eliminate sentencing disparities as between similarly situated defendants while maintaining sufficient flexibility to accommodate mitigating or aggravating circumstances in individual cases; and (3) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to criminal justice. 28 U.S.C. § 991(b)(1).

The remainder of SRA, in large part, contains specific rules to narrow and define the parameters of the Commission's task. It directs the Commission to use a two-dimensional matrix for different categories of offenses versus different categories of defendants. *See* 28 U.S.C. § 994(c) and (d). Congress further channeled the Commission's efforts by suggesting seven specific factors to be considered in categorizing different offenses and eleven specific factors for different defendants. *Id.* SRA also requires the Commission to assure neutral guidelines with respect to race, sex, national origin, creed, and socio-economic status. § 994(d). SRA also directs the Commission to assure the general inappropriateness of considering the defendant's education, vocational skills, employment record, community ties, and family ties and responsibilities in recommending a term of imprisonment. § 994(e).

SRA directs the Commission to structure the Guidelines to minimize prison overcrowding. § 994(g). The Guidelines are to reflect congressional favor for those defendants who substantially assist a criminal investigation. § 994(n).

In addition to this abundance of legislative instruction, Congress expressed specific sentencing preferences for certain categories of offenses and defendants. Congress deemed terms of maximum or near maximum imprisonment to be justified where the offense was a crime of violence or was one of certain controlled substance crimes and the offender had been previously convicted of two or more similar felonies. § 994(h). Congress deemed a "substantial term of imprisonment" necessary where the defendant is a repeat offender or career criminal, the defendant acted in a managerial capacity in furtherance of a racketeering activity conspiracy, the defendant committed a felonious crime of violence during the pendency of a criminal proceeding against him, or the defendant committed one of several drug offenses including trafficking in a substantial quantity of controlled substance. § 994(i).

Congress, by SRA, also directed that the Commission assure that the Guidelines reflect the general appropriateness of imposing a sentence other than imprisonment on first offenders who have not committed a crime of violence or an "otherwise serious offense." In the same subsection, Congress noted the general appropriateness of imposing a term of imprisonment on persons convicted of crimes of violence that result in serious bodily injury. § 994(j).

"It is not necessary that Congress supply administrative officials with a specific formula for their guidance in a field where flexibility and adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program." *Lichter v. United States*, 334 U.S. 742, 785, 68 S.Ct. 1294, 1316, 92 L.Ed. 1694 (1948). SRA provides ample statements of policy and specific rules to guide the Commission's exercise of the delegated authority. The Court therefore holds that the contention that SRA constitutes an invalid delegation of legislative power is totally without merit.

### Invalidity Based Upon Separation of Powers Doctrine

■ This alleged ground for vitiating the Guidelines is based upon the separation of power principle which our founding fathers so wisely incorporated into the Constitution in Articles I, II and III. For the purposes of this motion, the concept is broadly stated in *Hayburn's Case* 2 U.S. (Dall) 408, 410 n. 1, 1 L.Ed 436 (1792) wherein the Court stated:

Neither the legislative nor executive branches can constitutionally assign to the judicial any duties but such as are properly judicial and to be performed in a judicial manner.

More specifically, the defendants contend that SRA must be stricken because (1) by its language, it places the Commission in the judicial branch; (2) it mandates the service of three Article III judges; and (3) it vests appointment and removal powers in the President.

It is the contention of the United States, speaking through an Assistant United States Attorney for the Western District of Tennessee who stated that his brief followed the position adopted and espoused by the Department of Justice of the United States, that SRA in fact places the Commission in the executive branch, that the recitation in the Act that the Commission is in the judicial branch is severable and must be elided and that there is precedent for and nothing wrong with Article III judges voluntarily assisting the executive branch by voluntary services.

The statute of the United States which established the Commission and prescribed its power and duties was codified as 28 U.S.C. §§ 991–998. The first sentence of Section 991 provides:

There is established as an independent commission *in the judicial branch* of the United States, a United States Sentencing Commission which shall consist of seven voting members and one non-voting member. (Emphasis added).

Although the Attorney General or his designee was the non-voting member, he now concedes that the Commission must not be in the judicial branch.

SRA states that the President shall appoint three Article III judges from the names of six recommended by the Judicial Conference of the United States (a board of 26 Article III judges who are without question part of the judicial branch). The three judges appointed to the Commission must have the consent of the Senate. All voting members of the Commission are subject to removal solely by the President for neglect of duty, malfeasance, "or other good cause."

In *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), the Supreme Court held that it was impermissible under the separation of powers doctrine for Congress to retain the right to remove the Controller General, who is in the executive branch. Therefore, it is argued in the instant case, the right of the President to remove the voting members of the Commission, including the judges, establishes the Commission as a functionary of the executive branch *de facto*.

Historically, all three branches of the United States government have had roles in criminal sentences. The determination of the punishment for crimes is a legislative function, and courts cannot impose sentences not authorized by Congress. *Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980). Historically, however, the courts have imposed the sentences, and the Congress has given the district courts broad

discretion in the type of sentence including the term of imprisonment to be imposed. Under SRA, the Congress charged the Commission with narrowing the range of discretion of the courts in their imposition of sentences. SRA still affords the courts a range of punishment albeit narrower. Under SRA, the sentencing court also has the right and power to sentence lower or higher than the Guidelines subject to an explanation by the trial court and a review by a higher court. These reforms are to the end that a reform of the sentencing process was needed to cure the troublesome disparity-of-sentence problem perceived by a majority of the members of Congress.

There is abundant precedent of services rendered by members of the judiciary branch in the executive branch. John Jay, the first Chief Justice and one of the authors of *The Federalist,* served simultaneously as Chief Justice and Ambassador to England in 1794 at the behest of President Washington, and a successor, Oliver Ellsworth, was simultaneously Chief Justice and Minister to France. See S. Slonim, *Extrajudicial Activities and the Principle of the Separation of Powers,* 29 *Conn.B.J.* 391, 401 (1975). Chief Justice John Marshall also served briefly as Secretary of State during his term on Supreme Court. See *Matter of President's Commission on Organized Crime, Subpoena of Nicodemo Scarfo,* 783 F.2d 370, 377 (3rd Cir.1986) (hereafter *"Scarfo"*); Mason, *Extrajudicial Work for Judges: The Views of Chief Justice Stone,* 67 Harv.L.Rev. 193 (1953).

More recently, during his tenure as an Associate Justice, Charles Evan Hughes was appointed to the presidential commission to determine postal rates, Justice Owen Roberts served on the commission to investigate the disaster of Pearl Harbor, Justice Robert Jackson as a prosecutor at Nuremberg, and Chief Justice Earl Warren presided over the commission investigating the assassination of John F. Kennedy. *Scarfo,* 783 F.2d at 377.

Furthermore, power of the executive branch to effect or control the punishment of crimes has been recognized many times.

The federal courts have on numerous occasions rejected constitutional challenges to the authority of law enforcement officials to define explosives or classify drugs for criminal law purposes. See, e.g., *United States v. Womack,* 654 F.2d 1034 (11th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 314 (1982); *United States v. Gordon,* 580 F.2d 827, 840 (5th Cir.), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978).

Similarly, in *United States v. Daniel,* 813 F.2d 661 (5th Cir.1987), the Court reiterated that no separation of powers problem is posed by delegation to the Attorney General of the ability to reclassify controlled substances, even though the reclassification meant that the maximum penalty for distribution of the substance thereby changed. *Id.* at 662, 663; and see cases cited therein. The Parole Commission as part of the Executive Branch has been attempting to control sentencing disparities for many years. As the Supreme Court has observed, "[r]ather than being an *ad hoc* exercise of clemency, parole is an established variation on imprisonment of convicted criminals." *Morrissey v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972). Before creation of the Sentencing Commission, "Congress [had] decided that the [Parole] Commission is in the best position to determine when release is appropriate, and in doing so, to moderate the disparities in the sentencing practices of individual judges."

Attacks against the work of the Parole Commission based on separation of powers arguments consistently have been rejected by the courts. See decision cited in *Geraghty v. United States Parole Commission,* 719 F.2d 1199, 1211 (3rd Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984). In *Geraghty,* the Third Circuit concluded that the Parole Commission "in effect, * * * is making [a] sentencing decision." *Id.* at 1208. Nevertheless, this conclusion did *not* mean that the Executive Branch had been improperly delegated a judicial function: "[u]nlike interpreting the Constitution or adjudicating disputes, *sentencing is not inherently or*

*exclusively a judicial function." Id.* at 1211; emphasis added.

The words of Mr. Justice Oliver Wendell Holmes in *Blodgett v. Holden,* 275 U.S. 142, 148, 48 S.Ct. 105, 107, 72 L.Ed. 206 (1927), are very apt in the resolution of the constitutional attack upon SRA.

> Although research has shown and practice has established the futility of the charge that it was a usurpation when this Court undertook to declare an Act of Congress unconstitutional, I suppose that we all agree that to do so is the gravest and most delicate duty that this Court is called on to perform. Upon this among other considerations the rule is settled that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act. Even to avoid a serious doubt the rule is the same.

The "duty" becomes even more grave and delicate when the courts are called upon to declare unconstitutional an act which the Congress has passed to achieve what it perceives to be a greatly needed reform of the sentencing procedures in which the judiciary has been given such broad discretion.

It appears to this Court, for the reasons set forth above, that the Commission established by SRA is in fact in the executive branch; that the work of the Commission is a proper method of pursuing sentencing reform; that having three Article III judges appointed as voting members of the Commission and thereby obtaining their expertise in the field of sentencing is sensible and not unlawful; that the recitation in the Act that the Commission is "in the judicial branch of the United States" is *harmless error* and that the erroneous provision should be elided from the Act, thereby salvaging the long sought after sentencing reforms. This Court therefore concludes that the motions to invalidate the Sentencing Reform Act and the Guidelines adopted pursuant thereto upon the grounds of unconstitutionality are to be denied.

## *Invalidity of Guidelines Upon Statutory Grounds*

■ As previously indicated, the motions considered herein include a claim that certain portions of the Guidelines promulgated by the Commission are invalid because they are inconsistent with the enabling statute. The topics sought to be invalidated on this principle are discussed below.

*Retention of Option of Probation Except Where Specifically Prohibited.* This involves an interpretation of 28 U.S.C. § 994(j) where there is a direction concerning "the general appropriateness" of a sentence other than imprisonment for a first offender who has not been convicted of a crime of violence or "an otherwise serious offense," and "the general appropriateness" of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

This Court disagrees with defendant Coleman's contention that a common sense reading of the statute "compels the conclusion that Congress intended that probation be an option in every first offender case except those involving a crime of violence that results in serious bodily injury." Furthermore, there is no evidentiary support for a determination of the "appropriateness" of considering probation for the defendant Coleman with or without the Guidelines.

*Taking Into Account Capacity of Prisons.* This has reference to 28 U.S.C. § 994(g) wherein the Commission is instructed to take into account the nature and capacity of penal facilities, etc. and shall minimize the likelihood of the prison population exceeding capacity as determined by the Commission.

A determination of whether the Commission complied will require extended evidence of prison capacities and projections of future population in the prisons and the expected effect of the Guidelines. There is no record upon which findings could be made.

*Option of Court to Impose Supervised Release and a Fine.* These claims that the Guidelines are inconsistent with the statute are based upon Title 18 U.S.C. sections

3583(a) (supervised release may be imposed unless criminal statute requires otherwise) and 3571(a) (fine may be imposed). Defendant Coleman charges invalidity of the Guidelines because they *require* supervised release upon every sentence of imprisonment for more than one year and a fine in all cases except where a defendant establishes that he is not able to pay the fine or imposition of the fine would unduly burden the defendant's dependents.

At the outset it is noted that this complaint is not applicable to the defendant Coleman because the statute to which he has plead guilty has a mandatory four-year special parole (supervised release) provision and because there can be no determination of his ability to pay a fine or the burden it would impose on his dependents until the time of sentencing. If neither of the exceptions to the fine provision apply, there could be an appeal of the imposition of a fine if the defendant still contends that the fine was imposed because it was mandatorily imposed.

■ It is the opinion of this Court that the enabling statute did not authorize the Commission to establish unlawful sentencing guidelines. Therefore a sentencing court could sentence outside the guidelines if there is a determination by the sentencing court that the sentence was unlawful or if the court imposes an allegedly unlawful sentence, an appeal can be taken from that ruling by the court.

This Court therefore rules that the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act are not to be declared invalid upon the grounds asserted in the motions in these cases.

ALL OF THE ABOVE IS SO ORDERED.