REVISED, August 7, 1998

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-10472
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD EUGENE MILLER,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas

_____

July 13, 1998

Before BARKSDALE, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

Richard Eugene Miller appeals his conviction for possession of marijuana with intent to

distribute and a related forfeiture count. He challenges the denial of a motion to suppress evidence

and the sufficiency of the evidence supporting the conviction and forfeiture. We hold that the district

court erred in admitting into evidence drugs that were seized when Miller was stopped for having

a turn signal on without turning or changing lanes. Finding that flashing a turn signal under these

circumstances is not a violation of Texas law and therefore did not create probable cause for the stop,

and that Miller's subsequent consent to search did not cure the taint of the unconstitutional

stop, we vacate the judgment of conviction with respect to each count and remand.

## I.  BACKGROUND

Shortly before 1:00 p.m. on September 27, 1996, Randell County Deputy Sheriff John Sheets spotted Richard Eugene Miller driving a motor home east on Interstate 40, near Amarillo, Texas. Sheets was working as a member of the Criminal Interdiction Unit of the Panhandle Regional Narcotics Trafficking Task Force, which, according to Sheets, sought to interdict illegal drugs by stopping motorists under the pretext of enforcing traffic laws in order to obtain voluntary consent to search their vehicles.  Sheets, observing that Miller's motor home had no front license plate, turned around to follow it to see if it had the required license registration in the rear.  As Sheets was following, Miller exited Interstate 40, turning south onto Soncy Road.  Sheets then saw that the motor home had a temporary Colorado registration tag, but also noticed that it had its left turn signal on for a period of time during which it proceeded through an intersection but did not turn left nor change lanes to the left.  Sheets pulled Miller over, and they were joined shortly thereafter by Brent Clay, an Amarillo police officer who was also a member of the Regional Narcotics Task Force.

After pulling him over, Sheets informed Miller that he was going to issue him a warning citation for improper use of his left turn signal.  He then told Miller that he and Clay were looking for illegal contraband and asked if Miller would mind if he and Clay searched the motor home.  Miller indicated that he did not object to a search.  The officers undertook a search and found approximately eighty kilograms of marijuana in a compartment under a bed in the motor home and they arrested Miller.

Miller was indicted for possession with intent to distribute marijuana and the prosecution

2

sought forfeiture of his motor home. Miller pleaded not guilty and moved to suppress both the admission of the marijuana and certain statements he made after his arrest. The magistrate judge held an evidentiary hearing and recommended that the motion to suppress be denied. The district court then conducted a hearing and denied the motion to suppress with respect to the admission of the marijuana but granted it with respect to Miller's statements.

A jury trial was held over two days. Miller was convicted of possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and his motor home was found to be subject to forfeiture pursuant to 21 U.S.C. § 853. He was sentenced to four years and eight months imprisonment and three years supervised release. He timely filed a notice of appeal.

## II. DISCUSSION

Miller argues that the district court erred in denying his motion to suppress with respect to the marijuana found in his motor home because it was obtained as the result of an unconstitutional stop. To justify the stop the prosecution relies solely, as it did in the court below, on the claim that the police had probable cause to stop Miller because he violated Texas law by flashing his turn signal without turning or changing lanes. Miller asserts that there is no such violation under Texas law, and that therefore no probable cause to stop him existed. He also argues that his consent to search did not cure the taint of the illegal stop. It cannot be disputed that the fruits of the stop were essential in securing Miller's conviction on each count.

### A.

We review determinations of probable cause *de novo*, accepting findings of fact absent clear error. *See Ornelas v. United States,* 116 S.Ct. 1657, 1663 (1996). "Temporary detention of

individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]. An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 116 S. Ct. 1769, 1772 (1996) (internal citations omitted). The central question before us, therefore, is whether Sheets had probable cause to believe that Miller had committed a traffic violation.

The prosecution argues that Sheets had probable cause to stop Miller because by flashing a turn signal without turning or changing lanes he was in violation of section 547.305 of the Texas Transportation Code. That section states, in full:

> A person may not operate a motor vehicle equipped with a red, white, or blue beacon, flashing, or alternating light unless the equipment is: (1) used as specifically authorized by this chapter; or (2) a running lamp, headlamp, taillamp, backup lamp, or turn signal that is used as authorized by law.

Tex. Transp. Code § 547.305(c) (Vernon Supp. 1997). The prosecution argues that flashing a light without turning or changing lanes is not "specifically authorized by law" by pointing to § 545.104 of the Texas Transportation Code to show that the only authorized uses of flashing lights are to signal turns, lane changes, or movements out of a parked position. Section 545.104 states, in full:

> (a) An operator shall use the signal authorized by Section 545.106[1] to indicate an intention

_____

[1] Section 545.106 states, in full:

(a) Except as provided by Subsection (b), an operator required to give a stop or turn signal shall do so by:
> (1) using the hand and arm; or
> (2) lighting signal lamps approved by the department.

to turn, change lanes, or start from a parked position.

(b) An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.

(c) An operator may not light the signals on only one side of the vehicle on a parked or disabled vehicle or use the signals as a courtesy or "do pass" signal to the operator of another vehicle approaching from the rear.

Tex. Transp. Code § 545.104 (Vernon Supp. 1997).

Miller points out that the cited provisions do not explicitly state that flashing a turn signal without turning or changing lanes is a violation and asserts that it is inappropriate to read such a violation into section 547.305(c), a provision which is concerned with the types of lighting equipment that vehicles are required and forbidden to have. In support of his position that the statute did not provide sufficient notice of such a violation, Miller quotes the Assistant U.S. Attorney's own statement at trial that "[t]he statute is real clear to [her], but you almost have to read it backwards."

We agree with Miller that a plain reading of the Code provisions at issue does not support the view that having a turn light on without turning or changing lanes is a violation of Texas law. Section 547.305(c) appears in the Code in a chapter titled "Vehicle Equipment," in the subchapter "General

---

(b) A motor vehicle in use on a highway shall be equipped with signal lamps, and the required signal shall be given by lighting the lamps, if:

> (1) the distance from the center of the top of the steering post to the left outside limit of the body, cab, or load of the motor vehicle is more than two feet; or
> (2) the distance from the center of the top of the steering post to the rear limit of the body or load, including the body or load of a combination of vehicles, is more than 14 feet.

Tex. Transp. Code § 545.106 (Vernon Supp. 1997).

Provisions Regarding Lighting Requirements." Although the section has the heading "Restrictions on the Use of Lights," a review of the section indicates that it addresses what kinds of lighting equipment are required and prohibited on various vehicles, rather than how or when lights are to be used. The aim of the particular provision cited by the prosecution clearly seems to be prohibiting vehicle owners from operating vehicles equipped with non-standard lights. It should go without saying that penal statutes are to be strictly construed, *see United States v. Daniel,* 813 F.2d 661 (5th Cir. 1987), and we find it strained to infer that the reference in section 547.305(c) to the phrase "turn signal that is used as authorized by law" creates a series of violations for all uses that are not explicitly authorized. The phrase is more readily understood to be noting the types of lights that are excepted from the rule against operating a motor vehicle equipped with a red, white, or blue beacon or flashing light, rather than to be specifying that any particular uses of the lights that are allowed constitute infractions. This reading is strengthened by the fact that the chapter in which the provision appears has a separate "General Offense" section, which identifies violations entailing the operation of vehicles that are not appropriately equipped, without any suggestion that the chapter makes it a violation to use lights that one is allowed to have on a vehicle in any particular way.[2]

---

[2] The General Offenses section reads:

    (a)    A person commits an offense that is a misdemeanor if the person operates or moves or, as an owner, knowingly permits another to operate or move, a vehicle that: (1) is unsafe so as to endanger a person; (2) is not equipped in a manner that complies with the vehicle equipment standards and requirements established by this chapter; or (3) is equipped in a manner prohibited by this chapter.

    (b)    A person commits an offense that is a misdemeanor if the person operates a vehicle equipped with an item of vehicle equipment that the person knows has

been determined in a compliance proceeding under Section 547.206 to not comply with a department standard.

Tex. Transp. Code § 547.004 (Vernon Supp. 1997).

Even more striking is the fact that section 545.104--the section from which the prosecution seeks to derive what counts as turn signaling that is "authorized by law"--explicitly indicates two instances in which signaling is prohibited: when a vehicle is parked or disabled and when used as a "do pass" signal. It is hard to reconcile the legislature's view that these particular uses of signaling had to be identified as violations if it intended that any other uses not specifically authorized were to be considered violations.

Moreover, the prosecution offers no evidence that in practice the Texas Code has been interpreted to establish the violation alleged here. In sum, the prosecution is advocating an interpretation of the Texas law that is not supported by a plain reading of the statute and without evidence that anyone has previously adopted such a reading. The prosecution simply asserts that "[a]ny reasonable person would agree that the public is endangered if there are no enforceable infractions of the motor vehicle code to restrict drivers from operating vehicles with turn signals flashing and not turning." But even if it is true that any reasonable person would agree that the public would be endangered if no such violation exists--and this claim seems at least arguable--that would not be sufficient ground to create a violation that the legislature did not clearly establish. As we noted above, the prosecution's sole theory of probable cause in this case is that flashing a turn signal without turning or changing lanes is in and of itself a violation of the Texas Transportation Code; the prosecution has not argued, and we therefore do not consider, whether any danger that might be associated with having a turn signal on provides any other basis of probable cause for a stop.

The rule articulated by the Supreme Court in *Whren* provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to

7

the legal justifications for their actions.[3] But the flip side of that leeway is that the legal justification must be objectively grounded. *See Whren,* 116 S. Ct. at 1774; *see also Goodwin v. Johnson,* 132 F.3d 162, 173 (5th Cir. 1998) ("*So long as a traffic law infraction that would have objectively justified the stop had taken place*, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment." (emphasis added)). Here, given that having a turn signal on is not a violation of Texas law, no objective basis for probable cause justified the stop of Miller.

**B.**

We next address whether Miller's consent to the search of his motor home cured the constitutional taint on the evidence that was found during that search. Under the fruit of the poisonous tree doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the constitutional violation. *See Brown v. Illinois*, 95 S. Ct. 2254, 2259-2261 (1975) (discussing *Wong Sun v. United States,* 83 S. Ct. 407 (1963)); *United States v. Cherry,* 759 F.2d 1196, 1210-11 (5th Cir. 1985). The burden on the prosecution to show that consent to a search was voluntary is significantly heavier when it follows a constitutional violation. *See Cherry*, 759 F.2d at 1210-11. The analysis that must be undertaken in this situation is explained in *United States v. Chavez-Villarreal,* 3 F.3d 124, 127-28 (5th Cir. 1993) (citing *Brown,* 95 S. Ct. 2254):

---

[3] Of course, as the *Whren* Court makes clear, the leeway allowed regarding subjective intent does not protect any discriminatory application of laws that would violate the Fourteenth Amendment. *See Whren,* 116 S. Ct at 1774.

Even though voluntarily given, consent does not remove the taint of an illegal detention if it is the product of that detention and not an independent act of free will. To determine whether the causal chain was broken, we consider: (1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct. The burden of showing admissibility rests on the government.

The district court determined that Miller consented to the search of his motor home, but, because it had erroneously found that there was probable cause for the stop, it had applied only the normal standard for consensual searches that occur subsequent to legal stops, rather than the heightened standard required by *Brown* and *Chavez-Villarreal*. Having before us an adequate record, it is in the interest of judicial economy that we undertake the appropriate analysis.

The first factor identified in *Brown* and *Chavez-Villarreal*--temporal proximity--strongly militates in favor of suppression here given that the police asked for consent to the search within ninety seconds of having stopped Miller on the basis of his flashing turn signal. The second factor also comes down clearly in favor of suppression given that the prosecution offers no arguments to suggest any relevant intervening factors and the record suggests none. Furthermore, the officers themselves testified that the purpose of their traffic stops was to seek the consent of drivers to search for drugs, thereby suggesting that no intervening factors would have been necessary to induce them to seek consent. With respect to the flagrancy factor, while more egregious violations of Fourth Amendment rights are possible, the type of violation here--stopping a suspect without probable cause--is the sort of police behavior that the *Brown/Chavez-Villarreal* test is meant to discourage. Thus, in light of the three relevant factors, we find that Miller's consent to search did not cure the taint of the unconstitutional stop, and the marijuana found should have been suppressed.

9

## C.

Although the erroneous admission of the marijuana necessitates remand, we will consider Miller's challenge to the sufficiency of the evidence in order to preempt any possibility of a double jeopardy issue arising should the prosecution choose to retry this case. *See United States v. Miller,* 952 F.2d 866, 874 (5th Cir. 1992) ("Although not mandated by the double jeopardy clause, it is accordingly clearly the better practice for the appellate court on an initial appeal to dispose of any claim properly presented to it that the evidence at trial was legally insufficient to warrant the thus challenged conviction."). In conducting a sufficiency review under such circumstances, we consider all of the evidence that was before the jury--including evidence that was erroneously admitted. *See Lockhart v. Nelson,* 109 S. Ct. 285 (1988); *United States v. Marshall,* 762 F.2d 419 (5th Cir. 1985).

"It is fundamental that we, as an appellate court, owe great deference to a jury verdict." *United States v. Walters,* 87 F.3d 663, 667 (5th Cir. 1996). As a result, in reviewing a challenge to the sufficiency of the evidence, we apply a now familiar standard:

> we determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt. We recognize that the jury was free to choose among all reasonable constructions of the evidence, and we accept all credibility choices that tend to support the jury's verdict. We view the evidence, both direct and circumstantial, as well as all reasonable inferences from that evidence, in the light most favorable to the verdict. Moreover, we determine only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence. Further, the evidence need not exclude every reasonable hypothesis of innocence. However, we must reverse a conviction if the evidence construed in favor of the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged.

*United States v. Dean,* 59 F.3d 1479, 1484 (5th Cir. 1995) (internal quotation marks and citations omitted).

10

Under 21 U.S.C. § 841(a)(1), possession of marijuana with intent to distribute has three elements: (1) knowing (2) possession (3) with intent to distribute. *See United States v. Garcia,* 917 F.2d 1370, 1376 (5th Cir. 1990). Miller argues that there was not sufficient evidence to support the knowledge element. He points out that in this circuit when contraband is hidden in the secret compartment of a vehicle, control over the vehicle is not alone sufficient to infer knowledge of the contraband, *see United States v. Resio-Trejo,* 45 F.3d 907, 911 (5th Cir. 1995), and he asserts that the prosecution did not provide the additional evidence required to establish guilty knowledge. We disagree.

"Knowledge of the presence of narcotics often may be inferred from the exercise of control over the vehicle in which the illegal drugs are concealed." *Resio-Trejo,* 45 F.3d at 911 (citation omitted). It is true that in cases involving hidden compartments we require that additional factors support finding consciousness of guilt, *see United States v. Olivier-Becerril,* 861 F.2d 424, 427 (5th Cir. 1988), but we have noted that "proof that possession of contraband is knowing will usually depend on inference and circumstantial evidence." *United States v. Richardson,* 848 F.2d 509, 514 (5th Cir. 1988). No single piece of circumstantial evidence need be conclusive when considered in isolation; the question, rather, is whether the evidence, when considered as a whole, provides a substantial basis for the jury to find that the defendant's possession was knowing. *See id.*

At trial, the prosecution introduced evidence that Miller had bought his motor home not long before he was arrested, that Miller had purchased the motor home with cash, and that he had been impatient when kept waiting the night he purchased it. The prosecution also offered evidence that the motor home did not have the secret storage compartment when Miller acquired it. Miller testified

11

that he had taken the motor home to a mechanic, seeking repairs on the brakes and modifications to the bed. Although on Miller's account he could have believed the modifications were benign, the jury was free to disbelieve part or all of his testimony and to draw inferences from the fact that he admitted that he was aware that the bed under which the drugs were later found had been modified. We find that this evidence, taken cumulatively and in addition to the fact that Miller was in control of the vehicle when the marijuana was found, provided a substantial basis on which a reasonable jury could conclude that Miller had the requisite knowledge.

Finally, Miller challenges the sufficiency of the evidence supporting the forfeiture count against him; he makes this challenge solely on the basis that the forfeiture count is contingent on the underlying drug offense which he claims is not supported by substantial evidence. Accordingly, because we find that there was sufficient evidence to sustain the conviction with respect to possession with intent, we find there was sufficient evidence to sustain the conviction with respect to the forfeiture.

For the foregoing reasons, we VACATE the judgement of conviction on each count and REMAND for further proceedings not inconsistent with this opinion.

ENDRECORD

12

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting:

Miller was stopped by a Randall County, Texas, Deputy Sheriff, consented to a search of his recreational vehicle, and was found to be transporting 80 kilograms of marijuana in a secret compartment. The majority, interpreting the Texas Transportation Code, holds that the Deputy lacked probable cause to initiate the stop, concluding that the event he witnessed — driving for an extended distance in the right lane, including through an intersection, with the left turn signal flashing, but without ever turning or changing lanes — was not a violation of Texas law. Because the stop was based properly on a violation of Texas law, I respectfully dissent from Parts II A and B of the opinion.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, ___ U.S. ___, 116 S. Ct. 1769, 1772 (1996). The Government, for its own reasons, supports the stop only on the ground that Texas law was violated. Hence, other possible supporting bases for such a violation, especially in the light of the avenues offered by *Whren*, await another day.

The Deputy testified at the suppression hearing that the violation Miller committed was that Miller "left his left-hand turn signal on for a period of time through an intersection, completely through the intersection, and for a distance without attempting to change lanes". The Deputy testified further that, when initiating the stop, he relied upon §§ 545.10 and 547.305 (quoted in majority

opinion) of the Texas Transportation Code.

According to § 545.104(a), Miller could *only* use an authorized turn signal to indicate either an intention to turn, or to change lanes, or to start from a parked position. *See* TEX. TRANS. CODE § 545.104(a) (Vernon Supp. 1997). Moreover, § 547.305(c) provides that Miller could not operate his vehicle with a flashing or alternating light, unless it was a turn signal lamp *that was used* as *authorized by law.* *See* TEX. TRANS. CODE § 547.305(c) (Vernon Supp. 1997).

Obviously, contrary to § 545.104(a), Miller was not using his turn signal as an indication of an intent to turn, or to change lanes, or to start from a parked position. Thus, his use of the turn signal *was not authorized by law*, and, accordingly, pursuant to § 547.305(c), constituted a violation of Texas law. In short, there was probable cause to believe that a traffic violation occurred; the stop was reasonable. *See* **Whren**, 116 S. Ct. at 1772.

The majority would require the Texas legislature to expressly proscribe traveling with a turn signal on for an extended distance, including through an intersection, without ever turning or changing lanes, before such an act would be a violation of Texas law. By such reasoning, *every conceivable* unauthorized use of a turn signal must be *expressly* prohibited in the Code. Instead, the Texas legislature chose to state the limited, *authorized* uses of a turn signal. Consequently, the use of a turn signal in the manner used

by Miller constituted an *unauthorized* use — a violation of Texas law.

Because I would hold that Miller's stop was not unreasonable, I respectfully dissent from Parts II A and B of the opinion.