**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 99-50046

---

UNITED STATES OF AMERICA,

                                                             Plaintiff-Appellee,

versus

RANDY PAT NEWMAN,

                                                             Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Texas
No. W-98-Cr-36-ALL

---

October 13, 2000

Before POLITZ, JONES, and STEWART, Circuit Judges.

PER CURIAM:[*]

       The issue before this court is whether the district court erred in denying Randy Newman's

("Newman") motion for judgment of acquittal following his conviction of arson under 18 U.S.C. §

844(i) (1994). For the reasons set forth below, we affirm the district court's ruling.

---

       [*] Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

FACTUAL AND PROCEDURAL HISTORY

In 1992, Newman opened the River Front Café ("café") in Waco, Texas. By the mid 1990's, the café had begun to experience financial difficulties.[1] In addition, the Internal Revenue Service ("IRS") had levied Newman ten times from December 1993 to December 1996 for repeatedly delinquent payment of payroll taxes.

As of November 17, 1996, the date of the café's fire, Newman and his wife had failed to file personal tax returns from 1991 to 1995. On November 15, 1996, IRS Revenue Officer J.D. Herrera ("Herrera") conducted a routine compliance check during the course of discussing the café's past due payroll taxes and asked Newman whether he was current on his personal tax returns. Newman not only declined to mention his nonexistent personal income tax filings to Herrera but also responded that he believed his personal filings were current except for 1996. Herrera admonished Newman regarding the severity of his tax situation and explained that if he could not consistently make payments in such a manner as to keep his taxes current, the IRS would be forced to close the café to prevent pyramiding of his tax liability.

Faced with the café's financial straits and the IRS threatening more vigorously enforced payment of his taxes, Newman engaged in some atypical behavior on the evening of November 17, 1996. After having lunch with his family at the café, Newman returned around 8:30 p.m. He ran the weekly reports, something he usually did on Monday mornings, and closed the café. Although Newman supervised the café daily, several of his employees attested that it was unusual for him to actually close the business, turn off the lights, and lock the doors.

---

[1] In 1995 and 1996, the café generated negative cash flows, and Newman was unable to pay the café's operating expenses.

After Newman finished closing around 10:00 p.m., he and dishwasher Charles Tatum ("Tatum"), the last two remaining employees, left together pursuant to café policy. Newman drove away in his white, dual-axle pickup truck and Tatum followed. The two parted company at a traffic light near Interstate Highway 35.

By 10:20 p.m., the café was as Newman and Tatum had left it. Security guard Angela Barber ("Barber") did, however, see a lost couple sitting in a Cadillac on the café's parking lot and stopped to give them directions. About fifteen minutes later, while continuing her rounds, Barber noticed an apparent fog surrounding the café. She drove back to the café, saw smoke and flames, and alerted 911. At approximately 10:48 p.m., the Waco Fire Department was dispatched to contain the blaze. When they arrived, firefighters found the café doors locked and the building a mere five minutes from total destruction.

Upon his subsequent arrival, Newman's interest was piqued when Barber told him she had seen a car on the parking lot earlier that evening. Newman asked Barber what time she had seen the car and then immediately beseeched his wife to confirm the time at which he had arrived home. He further inquired about the make of the vehicle. Newman's interest waned markedly, however, when Barber recounted the story of the lost couple in the Cadillac.

Moreover, Newman was particularly interested in whether the assistant fire chief, Richard Wilson ("Wilson"), thought the fire had started near the water heater. Café employees had noticed an odor emitting from the heater in the weeks preceding the fire, and Newman expressed his suspicions that the fire probably started near the heater. After sharing his concerns with Wilson, Newman told fire investigator Jerry Hawk ("Hawk") of his belief that the fire had started as a result of suspected fuel leaks around the water heater.

3

Upon entering the café, Hawk noticed a clear line of demarcation between the burned and non-burned areas. While he discovered that most of the severely burned area was near the water heater, Hawk did not believe that it started the fire. Hawk testified that near the water heater, the walls and the top of the door were burned but that the water heater was only slightly scorched and its controls were not melted nor was the area above the heater burned. Moreover, he declared that he had detected damages consistent with a low, even burning in parts of the restaurant, which evidenced the use of an accelerant.

During further investigation by Hawk and the insurance company, Newman interjected that some kids had spilled drinks in the area from which samples were being taken for testing. Subsequent arson laboratory analyses revealed the presence of isopropyl alcohol, an accelerant that causes the type of burn patterns that Hawk observed during his initial investigation at the café. All of these findings led Hawk to conclude that the café fire was not an accident.

The records of Newman's alarm system further supported Hawk's conclusions. First, on the night of November 17, the monitoring company received no indication that the alarm had been activated. Second, the alarm was functioning that evening because the company received a restore code at 12:58 a.m. on the morning of November 18.[2] The expert, therefore, testified that before the fire started, the alarm never sent a signal suggesting anyone had forcibly entered the café.

Only four people had keys to the café and knew the alarm security code. Moreover, the café doors were locked when firefighters arrived and the monitoring company received no reports of

---

[2] The code reception is significant because it establishes that the alarm was working before the fire. The alarm experienced some interference, however, probably resulting from heat damage during the fire. This interference tripped the system. But once it cooled down, the system was able to contact the monitoring company.

forcible entry on the night of the fire. These facts, along with the evidence uncovered during Hawk's investigation, inescapably smacked of arson.

Accordingly, a federal grand jury charged Newman with arson in violation of 18 U.S.C. § 844(i). Newman pleaded not guilty and was tried before a jury. The district court denied Newman's motion for judgment of acquittal and was found guilty. The district court sentenced Newman to the mandatory-minimum of 60 months' imprisonment and Newman appealed to this court.

DISCUSSION

I.      Standard of Review

"A motion for a judgment of acquittal challenges the sufficiency of the evidence to convict." United States v. Medina, 161 F.3d 867, 872 (5th Cir. 1998) (citing FED. R. CRIM. P. 29(a)). This court reviews a trial court's denial of a defendant's motion for judgment of acquittal *de novo*. See Medina, 161 F.3d at 872. During such review, this court determines whether the evidence, considered in the light most favorable to the verdict, would permit a rational trier of fact to find a defendant guilty beyond a reasonable doubt. See United States v. Guerrero, 169 F.3d 933, 938 (5th Cir. 1999) (citations omitted). This standard of review is applicable to sufficiency challenges predicated upon direct evidence as well as those based upon circumstantial evidence. See Guerrero, 169 F.3d at 938; United States v. Galvan, 693 F.2d 417, 419 (5th Cir. 1982).

Moreover, it is well established that this court does not function to determine guilt or innocence because that judgment is exclusively for the jury. See O'neal v. United States, 273 F.2d 549, 550 (5th Cir. 1960); United States v. Miller, 146 F.3d 274, 280 (5th Cir. 1998). Accordingly, we may not "invade the province of the jury by determining questions of credibility and weight of evidence." O'neal, 273 F.2d at 550; see also United States v. Meshack, 2000 WL 1218437, *19 n.6

5

(5th Cir. 2000) (asserting that credibility determinations are for the jury not this court on appeal). Succinctly stated, the jury's core function in criminal trials is making credibility determinations. See United States v. Scheffer, 523 U.S. 303, 312, 118 S. Ct. 1261, 1266, 140 L. Ed. 2d 413 (1998).

As such, "we as an appellate court, owe great deference to a jury verdict." United States v. Miller, 146 F.3d 274, 280 (5th Cir. 1998). Thus, in our sufficiency of the evidence review, "we must accept credibility choices that support the jury's verdict." Guerrero, 169 F.3d at 938. We determine only whether the jury's decision was rational, and the evidence to support such a decision need not exclude *every reasonable* hypothesis of innocence. See Miller, 146 F.3d at 280 (emphasis added).

II.     Analysis

To secure a conviction of Newman under 18 U.S.C. § 844(i), the government had a burden to prove beyond a reasonable doubt that he maliciously damaged or destroyed, or attempted to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce. Newman does not dispute that the café was real property used in interstate commerce nor that it was damaged by means of fire. Moreover, the intentional nature of the café fire is unchallenged. On appeal, Newman alleges that the government failed to introduce evidence sufficient to prove that he set the fire that damaged the café.

In United States v. Lundy, 809 F.2d 392, 396-397 (5th Cir. 1987), this court reasoned that evidence of the appellant's motive and opportunity to set the fire as well as proof that the building in question did not burn accidentally was sufficient, taken as a whole, to sustain the arson conviction. In the case at bar, the government proffered evidence of the café's poor financial performance and Newman's looming personal and business tax pressures to establish a motive for him to commit

6

arson. Furthermore, the government showed that it was temporally possible for Newman to have set the fire.[3] Although this temporal window of opportunity standing alone will not sustain the government's burden, when combined with the unusual behavior and suspicious comments of Newman at the scene of the fire and in later investigations, it provides a reasonable basis upon which the jury could have supported their verdict and is therefore sufficient evidence to sustain Newman's arson conviction.

United States v. Fiore, 821 F.2d 127 (5th Cir. 1987), is also instructive as it shares similar facts with the case at bar. Specifically, after the appellant left the building, a patrolman on routine rounds noticed the fire. The doors were locked when firefighters arrived. Although a functioning alarm was on the premises, the monitoring company had no record of the alarm being triggered, and no signs of forced entry were evident. Moreover, the appellant showed no signs of having set a fire when he arrived on the scene.[4] Acknowledging that the evidence was not overwhelming, this court still reasoned that the jury's verdict was "hardly irrational, and satisfie[d] constitutional standards." Fiore, 821 F.2d at 129. Accordingly, the very similar facts of Newman's case are sufficient to support the jury's verdict when considered with the café's financial difficulty, Newman's dire tax situation, and his coverage under a sizeable insurance policy.[5]

---

[3] Jeff Brzozowski, an agent working on the café case, simulated activities relevant to the café arson. He found that on the night of November 18, 1996, Newman had time to leave the café, set the alarm, walk to his car, drive away, circle back to the café, deactivate the alarm, enter the building, pour a can of liquid in the patterns associated with the café fire, and drive home.

[4] Newman also arrived on the scene with no visible signs of soot, singed skin or hair, nor noticeable odors of accelerants.

[5] The café's contents and its "betterments and improvements" were each insured for $103,000. The café's loss of business income insurance provided $300,000 worth of coverage. Newman was the beneficiary under each of these policies.

7

CONCLUSION

We therefore hold that the government presented sufficient evidence to support Newman's arson conviction and AFFIRM the district court's denial of Newman's motion for judgment of acquittal.

AFFIRMED.