UNITED STATES of America, Plaintiff,

v.

**Gerald GILLIAM, Mohamed Moussa Tamboura and Roger Moussa Bia, Defendants.**

**No. CRIM.A. 3:03CR–12–H.**

United States District Court, W.D. Kentucky at Louisville.

July 29, 2003.

Federal Defender, Western Kentucky Federal Community Defender, Inc., Dennis Olgin, Scott C. Byrd, Louisville, for Gerald Gilliam (1), Roger Moussa Bia (2), Mohamed Moussa Tamboura (3), Defendants.

Philip C. Chance, U.S. Attorney Office, Louisville, for United States of America, Plaintiff.

**MEMORANDUM AND ORDER**

HEYBURN, Chief Judge.

On January 9, 2003, Defendants Moussa Tamboura and Roger Moussa Bia were

stopped by California Highway Patrol Officer Del Gray. During the course of the stop Officer Gray searched Defendants' vehicle and located cocaine inside. Both Defendants were charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine, a schedule II controlled substance as defined by Title 21, United States Code.

On March 3, 2003, Defendants moved the Court to exclude from trial any and all evidence or testimony relating to the search and seizure of evidence during the January 9th traffic stop. The United States objected to the motion. Pursuant to 28 U.S.C. § 636(b)(1)(b), the Court referred the suppression motion to United States Magistrate Judge James D. Moyer for consideration and preparation of proposed findings of fact and recommendations for disposition. The Magistrate Judge conducted an evidentiary hearing on April 4, 2003. After listening to the evidence, which consisted solely of Officer Gray's testimony, the magistrate concluded that: (1) there was no basis for a lawful traffic stop; and (2) even if there was a lawful basis for the traffic stop, Officer Gray's testimony did not establish either reasonable suspicion or probable cause to believe that Defendants were engaged in criminal activity or that the car contained incriminating evidence, and therefore the investigatory detention was unlawful and the requirements of the automobile exception were not met. Accordingly, the Magistrate Judge recommended that the Court grant Defendants' joint motion to suppress evidence. The United States now objects to both the findings and conclusions of the Magistrate Judge that there was not probable cause or reasonable suspicion for the stop, search, and arrest of Defendants.

■ First, the United States maintains that the initial stop should be deemed constitutional because Officer Gray and his supervisors mistakenly believed a stop based on the presence of a single out-of-state license plate was legal. The Magistrate Judge correctly determined that Officer Gray's misunderstanding of the law, justifiable as it may have been at the time, cannot validate the stop. *See id.; United States v. Twilley*, 222 F.3d 1092 (9th Cir. 2000).

■ The United States also objects to the Magistrate Judge's conclusion that no other valid basis existed to stop Defendants. The evidence adduced at the hearing supports the Magistrate Judge's conclusion that no violation of California Vehicle Code § 2165(a) actually occurred. This section of the vehicle code contains an express exception for vehicles passing other vehicles, which everyone agrees is what was happening when Officer Gray observed Defendants' car. The Court concludes that the Magistrate Judge properly determined that under these facts neither Officer Gray, nor any officer, could not have objectively believed Defendants violated California Vehicle Code § 2165(a).[1]

■ Finally, the United States objects to the Magistrate Judge's conclusion that even if there was a basis for a lawful traffic stop, Officer Gray's testimony did not establish reasonable suspicion or probable cause to believe that Defendants were engaged in criminal activity or that the car

---

1. Like the Magistrate Judge this Court finds it particularly telling that Officer Gray testified that his sole basis for initiating the stop was the absence of a front license plate, and that he did not make the stop because Defendants were traveling below the posted speed limit while in the fast lane. While Officer Gray's subjective reason for the stop is not determinative, the Court believes that Officer Gray's testimony tends to indicate that there was no objective basis to believe that Defendants were violating California Vehicle Code § 2165(a) at the time of the stop.

contained incriminating evidence. The Court agrees with the Magistrate Judge that there was no basis for a lawful traffic stop in the first instance, and therefore that any and all evidence seized as a result of the stop must be suppressed at the trial as fruits of the poisonous tree. It is therefore not necessary to speculate on whether the search would have been valid if the initial stop had been legal.

The Court accepts the Findings of Fact, Conclusions of Law and Recommendation of the Magistrate Judge as related to the lawfulness of the Officer Gray's stop. The stop violated Defendants' Fourth Amendment rights.

IT IS HEREBY ORDERED that the joint motion of Defendants Mohamed Tamboura and Roger Bia to suppress evidence is SUSTAINED.

This is not a final and appealable order.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION

MOYER, United States Magistrate Judge.

Defendants Mohamed Tamboura and Roger Bia have filed a joint motion to suppress evidence seized and statements they made following a traffic stop of their vehicle in California (docket number ("DN") 20). The United States responded (DN 23), and the court referred the matter to the magistrate judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for evaluation and recommendation (DN 24). The magistrate judge conducted an evidentiary hearing (see Tr. (DN 28)). Both the United States (DN 33) and Messrs. Tamboura and Bia (DN 30 and 34) filed post-hearing briefs.

## I. INTRODUCTION

Messrs. Tamboura and Bia have been charged with conspiracy to possess with intent to distribute more than five kilograms of cocaine, pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii).[1] The cocaine at issue was discovered when a California Highway Patrolman, Officer Delbert Gray, stopped the defendants' rented car for a putative violation of California's license plate requirements and subsequently searched the trunk of the car without a warrant and without the defendants' consent. The defendants, who are African, assert that they were the targets of improper racial profiling and that Officer Gray lacked probable cause to stop their vehicle and search its contents. The United States disputes defendants' assertions and argues that Officer Gray properly stopped them for violating a section of California's Vehicle Code. The United States further argues that Officer Gray's observations of the defendants and their car immediately prior to and following the traffic stop created a reasonable suspicion of illegal activity, and provided him with probable cause to search their car.

During the evidentiary hearing, Officer Gray was the sole witness and was subjected to thorough examination by the Assistant United States Attorney, rigorous cross-examination by defense counsel, and occasional questioning by the magistrate judge. Having observed and considered the testimony of Officer Gray, and evaluated the arguments presented by counsel, the magistrate judge recommends that the defendants' motion be granted.

---

1. Gerald Gilliam, the first named defendant in this action, has also been charged with violations of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii), and also with aiding and abetting others with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii). Mr. Gilliam, who was not present at the time Messrs. Tamboura and Bia were stopped and arrested, has not joined in their motion to suppress.

## II. FINDINGS OF FACT

1) On January 9, 2003, Mohamed Tamboura was driving a new, rented Lincoln Town Car eastbound on Interstate 40 in California. (Tr. at 10–11, 45.) Mr. Bia was his passenger. (Tr. at 11.) Both men are African citizens with purportedly valid employment visas. (Defs.' Joint Mot. to Suppress at 1.) The men had rented the car in Louisville, Kentucky, just two days earlier, briefly visited California, and were returning in the general direction of Kentucky. (Tr. at 20.) Pursuant to Kentucky law, the rented Town Car had only one license plate attached, on the rear of the car. (Tr. at 13, 47; *see also* Ky.Rev.Stat. Ann. § 186.005(2).)

2) Shortly before 12:45 p.m., California Highway Patrolman Delbert Gray, in a marked black and white patrol car, observed the defendants' car as he pulled up behind and briefly followed them on eastbound Interstate 40. (Tr. at 10–12, 17.) As he approached their car, Officer Gray noticed that the defendants, who were in the left, faster lane (of two lanes of traffic) were driving slightly below the posted speed limit of 70 miles per hour. (Tr. at 11–12.) After less than a minute, or a minute and a half, during which time the defendants passed an even slower-moving tractor-trailer truck in the right lane, the defendants moved their car into the right lane and allowed Officer Gray's patrol car to pass.[2] (Tr. at 11, 44.) Officer Gray does not remember whether there were any other cars behind him, and did not testify that the defendants were impeding the flow of traffic. (Tr. at 11, 42.)

3) At the time Officer Gray passed the defendants' car, he noticed that it had only one license plate attached and that the car was not licensed in California. (Tr. at 13, 15.) After making that observation, Officer Gray slowed down until his car was once again behind the defendants' and, at that time, noticed that the vehicle was licensed in Kentucky. (Tr. at 13, 15, 44.) Officer Gray then decided to initiate a traffic stop on the basis that the defendants had violated California Vehicle Code § 5200. That statute requires the use of two plates, but applies only to vehicles licensed in California. At the hearing before the magistrate judge, Officer Gray testified that he should have cited the defendants for violating California Vehicle Code § 5202, which requires that the appropriate number of license plates be affixed to each car operated on California roads. (Tr. at 41, 46–47.) The appropriate number of plates to be affixed is determined by the issuing state. California is a two-plate state. Kentucky, like California's border state, Arizona, is a one-plate state.

4) Importantly, Officer Gray also repeatedly testified that although driving slightly below the posted speed limit in the left lane of traffic may constitute a violation of California Vehicle Code § 21654(a), the defendants' speed was not the reason for the stop. (Tr. at 41–42, 48.) In fact, he testified that the purported license plate violation was the *sole* basis for stopping the defendants' car, a fact supported by his post-arrest reports. (Tr. 47–48.)

5) Regardless of which section of the California Vehicle Code the defendants may have violated, Officer Gray asserted that his real motive for the stop was his suspicion that the defendants had stolen

---

2. Officer Gray's testimony appears to be inconsistent with respect to this point. He alternatively testifies that the defendants continued in the left lane for "half a mile" and for "a considerable distance" after passing the truck. Half a mile may be a "considerable distance" to Officer Gray, and the magistrate judge will assume that it is. At the speed defendants were traveling, though, half a mile would be traveled in less than thirty seconds, which is hardly a considerable amount of time.

the car. (Tr. at 17.) Officer Gray testified that the presence of but a single license plate often indicates that a car has been stolen (Tr. at 16–17) and, accordingly, he regularly stops cars with only one license plate (Tr. at 45–46). The defendants assert that Officer Gray stopped the car solely because of impermissible racial profiling. (Tr. at 57–59, 61–62.)

6) In any event, after stopping the car, Officer Gray approached it from the passenger side, and informed Messrs. Tamboura and Bia that he had pulled them over because they had only one license plate. (Tr. at 18.) Both men promptly advised Officer Gray that Kentucky requires the use of only one license plate, but Officer Gray continued to detain them nonetheless. (Tr. at 18, 53.) Mr. Bia, the passenger, apparently then tossed a cigarette butt out his window in front of Officer Gray and promptly picked it up when Officer Gray told him his act was illegal. (Tr. at 18–19, 52.) As Mr. Tamboura presented Officer Gray with his driver's license and the rental contract for the vehicle, Officer Gray looked inside the car and noticed two, maybe three, cellular phones on the front seat and a pillow in the back. (Tr. at 19, 52–53.) He then reviewed the rental contract and noticed that the men had rented the car just forty-eight hours before the traffic stop. (Tr. at 20, 52.)

7) According to Officer Gray, the short duration of the men's cross-continent trip, coupled with the presence of the cellular phones and the pillow in the back seat, immediately aroused his suspicions. (Tr. at 20–21.) Officer Gray has been employed by the California Highway Patrol for over sixteen years and participated in a highway drug interdiction team for approximately nine of those years. (Tr. at 5–9.) Based on his experience and concomitant training, Officer Gray has developed a list of items and behaviors he believes are indicia of drug trafficking. (Tr. at 35–36.) He testified that rental vehicles, in particular, are, in his opinion, one such indicator. (Tr. at 21, 35.)

8) Shortly thereafter, Officer Gray contacted his post to run a vehicle and license check. (Tr. at 22.) Significantly, however, he did not ask his post to confirm whether Kentucky was indeed a one-plate state.[3] (Tr. at 53–54.)

9) Both the vehicle and license checks revealed no violations or stolen vehicle reports. (Tr. at 51, 54.) While he was waiting for his post to run the check he requested, Officer Gray spoke with Messrs. Tamboura and Bia. (Tr. at 22–23.) According to Officer Gray, the men told him inconsistent stories about the purpose of their trip and their activities during their short visit to California. (Tr. at 23, 25–27.) Officer Gray also testified that, during his conversation with Mr. Tamboura, he noticed that Mr. Tamboura's eyes were extremely red and that he thought he could detect the faint smell of marijuana emanating from the car.[4] (Tr. at 24.) He then questioned both men about whether they had been smoking marijuana; both denied doing so. (Tr. at 25.) Mr. Tamboura informed Officer Gray that he constantly suffered from red eyes and that he had not been able to alleviate

---

**3.** Interestingly, even as late as the hearing before the magistrate judge, Officer Gray still had not bothered to find out whether Kentucky was a one- or two-plate state. (Tr. at 47.)

**4.** Officer Gray's olfactory powers are remarkable, since he testified that Mr. Bia had been smoking a conventional cigarette at the time he stopped the car less than ten minutes prior, and cigarette smoke is both malodorous and pervasive. (Tr. at 18–19, 25.) He did not elaborate how he could detect a faint or residual marijuana odor when, at the time of the stop, a cigarette was being actively smoked. Moreover, the search of the car produced no evidence of marijuana, *see infra,* making this "observation" even more problematic.

his condition. (Tr. at 55.) (Indeed, at the time of the hearing before the magistrate judge, Officer Gray again looked into Mr. Tamboura's eyes and testified that they were then as red as the day he arrested him. (Tr. at 55.)) Nevertheless, strongly suspicious at this time that both men were trafficking in drugs, Officer Gray administered pre-field and field sobriety tests on Mr. Tamboura. (Tr. at 28.)

10) The pre-field sobriety tests that Officer Gray administered supposedly consisted of a measurement of Mr. Tamboura's pulse, which was somewhat elevated (Tr. at 37), and a series of questions designed to determine whether Mr. Tamboura was suffering from any mental, physical, or chemically-induced (lawful or otherwise) impairments that might affect his ability to perform the field sobriety tests (Tr. at 28). Officer Gray testified that he next performed four field sobriety tests, each of which involved testing motor coordination, or counting ability, or the ability to estimate elapsed time, or some combination thereof. (Tr. at 28-34.) Mr. Tamboura's performance of the tests was not sufficiently poor to warrant a citation for driving under the influence. (Tr. at 34.) Moreover, in later tests conducted at his office, Officer Gray ultimately concluded that Mr. Tamboura had not been under the influence of any intoxicating substance at the time he performed the tests. (Tr. at 35.) Most notable, however, is that, in response to the direct examination by counsel for the United States, cross-examination by defense counsel and questions from the magistrate judge, Officer Gray never testified that Mr. Tamboura failed any of the tests, only that he "did not perform [the] test as demonstrated." (Tr. at 29, 31, 33, 56-57.) Nor did he explain how

the supposedly non-conforming test performances were indicative of intoxication.

11) Officer Gray next conducted a warrantless, non-consensual search of the men's vehicle, believing he had probable cause to do so. (Tr. at 38-40, 56.) According to Officer Gray, the fact that the car had been rented, the men's quick turn-around time, the fact that they were driving east-bound from Los Angeles and slightly below the posted speed limit, their supposedly conflicting stories about the purpose of their trip, their apparent nervousness in his presence,[5] and the presence of cellular phones and a pillow in the car, all indicated to him that the defendants likely were transporting drugs. (Tr. at 37-38, 51-54, 63.) Indeed, he testified that he was "almost positive." (Tr. at 39.) Officer Gray's suspicions were confirmed when he opened the trunk, located a back pack under a few articles of loose clothing, and discovered seven kilogram-sized packages of cocaine. (Tr. at 40.) After searching the car "high and low," however, he never discovered any of the marijuana he supposedly smelled. (Tr. at 54.)

12) Officer Gray immediately arrested Messrs. Tamboura and Bia, who allegedly made incriminating statements following their arrest. Officer Gray did not testify about, and the magistrate judge has not been asked to determine, whether the defendants were properly read their *Miranda* rights before they made the supposedly incriminating statements at issue.

13) The magistrate judge must now evaluate whether, in light of Officer Gray's actions, the defendants' joint motion to suppress should be granted.

## III. CONCLUSIONS OF LAW

1) The central question presented by this matter is whether the cocaine discov-

---

**5.** The sole indicia of nervousness noted by Officer Gray were Mr. Tamboura's somewhat-elevated pulse and Mr. Bia's decision to toss a

cigarette butt out the car's window in front of the Officer. (Tr. at 37, 52.)

ered in the defendants' car, and certain incriminating statements they supposedly made, should be excluded from the evidence at trial because they are "fruit of [a] poisonous tree." *See Wong Sun v. United States,* 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)(declaring that evidence discovered in violation of one's constitutional rights should be excluded at trial). To answer this question, the court must determine whether Officer Gray's initial stop of the defendants violated their constitutional rights, and, if not, whether his subsequent detention of them and warrantless, non-consensual search of their car did.

2) The starting point for the court's analysis is the Fourth Amendment to the United States Constitution, which protects the people of the United States, including resident aliens, from unreasonable searches and seizures. *See United States v. Verdugo–Urquidez,* 494 U.S. 259, 265, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990); *Kwong Hai Chew v. Colding,* 344 U.S. 590, 596 n. 5, 73 S.Ct. 472, 97 L.Ed. 576 (1953). The law is clear—the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons'" within the meaning of the Fourth Amendment. *See, e.g., Whren v. United States,* 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

3) If a police officer has probable cause to believe a civil traffic violation has occurred, he generally may stop the vehicle regardless of his subjective intent. *See id.* at 814, 818, 116 S.Ct. 1769; *see also United States v. Townsend,* 305 F.3d 537, 541 (6th Cir.2002). "To detain the motorist any longer than is reasonably necessary to issue the traffic citation, however, the officer must have reasonable suspicion that the individual is engaged in more extensive

criminal conduct." *Townsend,* 305 F.3d at 541.

4) Any search of a person's property conducted without a warrant is *per se* unreasonable, "subject only to a few specifically-established and well-delineated exceptions." *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Among the exceptions are (1) consensual searches, (2) the so-called "automobile exception," and (3) searches incident to arrest. *See, e.g., United States v. Cope,* 312 F.3d 757, 775 (6th Cir.2002). The "automobile exception" permits police officers to search vehicles without a warrant and without consent, if the vehicle is mobile and the officers have "probable cause to believe that it contains incriminating evidence." *Id.* (citing *Maryland v. Dyson,* 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)).

5) "Probable cause" denotes "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Saucedo,* 226 F.3d 782, 789 n. 13 (6th Cir.2000) (citations omitted). "The probable cause determination turns on what the officer knew at the time he made the stop." *United States v. Bradshaw,* 102 F.3d 204, 210 (6th Cir.1996).

6) "Reasonable suspicion" is generally held to be "a less demanding standard than probable cause." *Saucedo,* 226 F.3d at 789. It requires more than a hunch, however, and demands that the officer have "specific and articulable facts" to justify his actions. *Id.*

7) As the Supreme Court has noted, and as the United States Court of Appeals for the Sixth Circuit has recognized, however, "the concepts of 'reasonable suspicion' and 'probable cause' do not permit of precise

judicial definition and are dependent on circumstances." *See Townsend,* 305 F.3d at 542 (citing *Ornelas v. United States,* 517 U.S. 690, 695–96, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996))("Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. They are commonsense, nontechnical conceptions that deal with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' ")(internal citations omitted). Consequently, the Sixth Circuit has also recognized that one determination of probable cause or reasonable suspicion is seldom useful precedent for another. *Id.* (citing *Illinois v. Gates,* 462 U.S. 213, 238 n. 11, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The court must therefore determine whether the "combination of factors considered by the officer is sufficient" under the circumstances. *Id.* The magistrate judge's perceived credibility of the officer's testimony is thus of paramount importance.

8) The magistrate judge does not find the testimony of Officer Gray to be credible. There were a number of shortcomings in the testimony that the magistrate judge believes fell well short of the level of assurance one ordinarily experiences in assessing the presentation of an experienced law enforcement officer. In total, although the magistrate judge found no evidence sufficient to support the defendants' allegations of racial profiling, Officer Gray's explanation of the reasons for the traffic stop, the reasons for further investigative questioning, and the reasons for arresting the defendants, are individually and cumulatively troubling.

9) To begin with, Officer Gray's basis for the initial stop, the defendants' putative violation of California's license plate requirements, was completely without legal merit. He admitted that the defendants did not violate California Vehicle Code § 5200 (the violation he referenced in his post-arrest reports as his basis for the stop, but which applies only to California operators). Nor, as a matter of law, did the defendants' violate California Vehicle Code § 5202, for which Officer Gray testified that he should have cited them. *See United States v. Twilley,* 222 F.3d 1092, 1096 (9th Cir.2000)(noting that a one-plate state vehicle does not violate California Vehicle Code § 5202). The defendants' car had a valid Kentucky license plate attached to the rear of their car, in accordance with Kentucky law. *See* Ky.Rev. Stat. Ann. 186.050(1).

10) Although this appears to be an issue of first impression for the Sixth Circuit, the Fifth and Ninth Circuits have repeatedly held that a mistake of law cannot justify a traffic stop under the Fourth Amendment. *See. e.g., Twilley,* 222 F.3d at 1096 (holding that a California police officer's decision to stop a Michigan vehicle for a putative violation of California Vehicle Code § 5202 was not supported by reasonable suspicion (because Michigan is a one-plate state) and, therefore, violated the Fourth Amendment); *United States v. Lopez–Soto,* 205 F.3d 1101, 1106 (9th Cir. 2000); *United States v. Miller,* 146 F.3d 274, 279 (5th Cir.1998). The magistrate judge, contrary to his customary inclination, doubts that Officer Gray's arguable "mistake of law" was made in good faith.[6] Regardless, the courts of appeal that have

---

**6.** The magistrate judge reaches this conclusion in part because Officer Gray did not take the time to determine whether Kentucky was a one-plate state at the time he made the stop, and did not bother to find out in the months that followed. Certainly it would have been

easy enough to check Kentucky law through available resources from his own office, or to simply call the Kentucky State Police, who no doubt would have gladly shared the information. As a long time Highway Patrolman, he easily could know which states require only

been asked to address this issue have squarely held that "there is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law." *See, e.g., Lopez–Soto,* 205 F.3d at 1106; *United States v. Lopez–Valdez,* 178 F.3d 282, 289 (5th Cir.1999). The magistrate judge finds the analysis of the Fifth and Ninth Circuits persuasive and, consequently, recommends that the court hold that Officer Gray's initial stop was not only unlawful, but unconstitutional, and that the fruits of that illegal stop be excluded from the evidence at trial. *See Twilley,* 222 F.3d at 1096.

11) The United States argues that Officer Gray observed not one, but two, violations of California's Vehicle Code. It therefore argues that the stop is justified *post hoc,* regardless of what appeared on the defendants' citation. (*See* United States' Br. at 5.) The United States asserts that Officer Gray could have initiated the stop because the defendants supposedly were traveling below the speed limit in the "fast" lane of traffic, a supposed violation of California Vehicle Code § 21654(a), so his ultimate justification is irrelevant. The magistrate judge disagrees. As the Fifth Circuit aptly noted: "The rule articulated in *Whren* provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions. But the flip side of that leeway is that the legal justification must be objectively grounded." *Miller,* 146 F.3d at 279. While the rule announced in *Whren* is indeed broad, it has not yet been extended to permit *post*

hoc justification for traffic stops. The magistrate judge recommends that the court decline to do so here, particularly since Officer Gray testified that the license plate violation was the *sole* basis for his stop (*see* Tr. at 48), and he never cited them for driving below posted speed limits.

12) Moreover, the magistrate judge, after reviewing Officer Gray's testimony and the text of California Vehicle Code § 21654(a), does not believe that, as a matter of law, the defendants violated that Code section, either. Subsection (a) of Section 21654 of the California Vehicle Code states: "Notwithstanding the prima facie speed limits, any vehicle proceeding upon a highway at a speed *less than the normal speed of traffic* moving in the same direction at such time shall be driven in the right-hand lane for traffic ... *except when overtaking and passing another vehicle* proceeding in the same direction or when preparing for a left turn at an intersection ...." (Emphasis added.) This statute does not make it unlawful to drive below the posted speed limits in the left lane. Its implicit purpose is to prevent vehicles from impeding the speed of traffic. Regardless, it contains an express exception for vehicles passing other vehicles, which is what was happening at the time Officer Gray observed the defendants' car. (*See* Tr. at 11.)

13) After observing Officer Gray during the hearing, and considering other questionable aspects of his testimony, the magistrate judge doubts that the defendants were driving significantly below the posted speed limits.[7] Assuming, for the sake of

one plate, and arguably should, if it his practice to regularly stop vehicles lacking two plates. The magistrate judge therefore concludes that his lack of familiarity is not a "mistake" but an elective indifference which he uses to make stops of single license plate vehicles.

7. At least in Kentucky, it is standard practice to stop a motor vehicle for speeding only when radar is employed, absent a gross violation of the traffic laws for a very high speed. It is troublesome that Officer Gray would stop and detain motorists for an apparently minimal downward deviation from the posted maximum speed, without the benefit of radar.

argument only, that defendants were driving below posted speed limits, Officer Gray testified that he observed them for approximately one minute, during which time they passed a slower-moving tractor-trailer truck. *Id.* After passing the truck, they stayed in the left lane for less than another thirty seconds, then pulled into the right lane and allowed Officer Gray's car to pass. *Id.* There is no evidence that any other cars were behind Officer Gray's, or that the defendants were impeding the flow of traffic. (*See* Tr. at 11, 42.) The magistrate judge does not believe that there was any violation of this law, but, at most, defendants conduct could amount to only a *de minimis* violation. The Sixth Circuit recently declined to find probable cause for a traffic stop based on a *de minimis* traffic violation. *See United States v. Freeman,* 209 F.3d 464, 467 (6th Cir.2000)(single incident of a motor home partially weaving into an emergency lane did not violate Tennessee law and, therefore, did not create probable cause for a traffic stop). Consequently, even if *post hoc* justifications were permissible under the Fourth Amendment, the one proffered by the United States would not suffice in this matter.[8] Moreover, the *post hoc* justification offered by the United States is based on conduct which appears lawful (passing a truck) and where there is no radar verification for the alleged deviation from posted speed limits.

14) After reviewing the facts and the applicable law, the magistrate judge recommends that the court grant defendants' motion because the initial stop of their vehicle was unconstitutional. There are additional, equally-valid reasons for granting the motion, however. Officer Gray's detention of the defendants and his warrantless, non-consensual search of the vehicle were not supported by reasonable suspicion or probable cause.

15) As noted previously, to detain a motorist any longer than is "reasonably necessary" to issue a traffic citation, the officer must have "reasonable suspicion" that criminal activity is afoot. *See Townsend,* 305 F.3d at 541. In addition, to perform a constitutionally-permissible search of defendants' car, before he arrested them, Officer Gray needed (1) a warrant, or (2) consent, or (3) probable cause to believe that it contained incriminating evidence of criminal activity. *See Cope,* 312 F.3d at 775. It is undisputed that Officer Gray lacked a warrant, lacked consent, and that the search was prior to, not incident to, the defendants' arrest. After considering his testimony, the magistrate judge concludes that he lacked even reasonable suspicion, much less probable cause.

16) All but one of the apparent indicators of criminality on which Officer Gray relied for his investigative detention and subsequent search were highly subjective, not subject to corroboration, and not supported by any evidence other than his recollection. From a narrative of utterly ordinary behavior—driving only slightly

---

The lack of radar corroboration is another cumulative factor which leads the magistrate judge to doubt the credibility of Officer Gray's account of the traffic stop. (*See* ¶¶ 8,16, 17, *infra.*)

8. In addition, the magistrate judge considers it worth noting that Officer Gray's interpretation of the law would allow the stop of essentially any vehicle not driving at precisely the posted speed limit. Driving one mile above the posted limit would be speeding, driving below the limit in the left lane, under Officer Gray's practice, would constitute a violation of Section 21654(a)—even if the vehicle were not impeding the flow of traffic on a wide open, rural interstate highway. Such a practice would in essence allow the traffic stop of virtually all drivers, in the unchecked discretion of law enforcement officers, an invasion of privacy not sufficiently supported by countervailing governmental interests bolstered by a dubious interpretation of California law.

below the speed limit, having a pillow in the back seat of the car, discarding a cigarette before responding to questions— Officer Gray attempted to paint a picture of numerous indicators of suspicious behavior that only his trained eye could interpret. Many of the other supposed indicia of the defendants' criminal activity are either subjective or intrinsically unverifiable: a purported slight odor of marijuana, a supposed perception of nervousness, and, in Officer Gray's opinion, one cell phone too many.[9] One of the indicators is logically unsupportable—that driving a car with a single license plate is an indicator of a higher risk of a vehicle's being stolen.

17) Other parts of his testimony were similarly lacking in credibility. When he described the results of the field sobriety tests, Officer Gray described the tests in significant detail, as if to demonstrate his superior skill and training. Yet his description of Tamboura's performance on the tests was sketchy, and each time he recited, in mantra-like fashion, the stock conclusion that Tamboura did not "perform the test as demonstrated." He later explained that in the "controlled environment" of the police station, he concluded that Tamboura was not impaired, and concluded in the suppression hearing that Mr. Tamboura's eyes were then as red as the day on which he stopped him.

18) The only somewhat genuinely suspicious bits of information Officer Gray discovered during his detention of the defendants were: (1) the car had been rented only forty-eight hours prior to the stop, during which the defendants had driven all the way to California, and were now returning in the direction of home, and (2) the allegedly inconsistent stories of the defendants. Only the former is an objective factor; the latter is based wholly on Officer Gray's testimony, which the court finds problematic. In any event, the development of the rental car contract information itself is a product of the unlawful stop and subsequent detention of the defendants. The court does not find that this single factor itself would justify an automobile search.

19) In total, the magistrate judge thus was left with the distinct impression that Officer Gray's testimony regarding the basis for his alleged "probable cause" was mechanical and formulaic. His testimony did not have the detail and spontaneity that are the hallmarks of the authentic recollection of actual events and, in total, lacked credibility. Accordingly, the magistrate judge finds no support for the United States' assertion that Officer Gray had reasonable suspicion or probable cause to detain the defendants longer than was reasonably necessary to issue the invalid traffic citation or to search their car.

## IV.  RECOMMENDATION

In summary, there are two independently sufficient grounds to grant the motions to suppress. First, there was no basis for a lawful traffic stop, and any subsequent search is therefore invalid. Second, even if there were a basis for a lawful traffic stop, Officer Gray's testimony did not establish either reasonable suspicion or probable cause to believe that defendants were engaged in criminal activity or that the car contained incriminating evidence, and therefore the investigatory detention was

---

**9.** Although the magistrate judge recognizes that one determination of probable cause or reasonable suspicion is not often a useful precedent for another, because the determination is based on a perception of a combination of factors, no single one of which is determinative. *See Townsend,* 305 F.3d at 542 (Boggs, J.). The magistrate judge nevertheless notes with interest the Sixth Circuit's recent declaration that the presence of several cell phones in a car would be but a weak indicator of criminal activity, to the extent their presence was anything other than merely "odd." *Id.*

unlawful and the requirements of the automobile exception were not met.

The magistrate judge, having made the foregoing findings of fact and conclusions of law, recommends that the court grant the joint motion of Messrs. Tamboura and Bia to suppress evidence (DN 20).

June 3, 2003.